# EXHIBIT D
## to Defendant's Motion for Summary Judgment

## Affidavit of Jimmy Fackler

## Rodney Downie vs. TransLink Motor Express, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RODNEY DOWNIE, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: 2:06cv.313 WHA |
| JIMMY FALCO d/b/a TRANS LINK MOTOR EXPRESS, INC., | ) |
| Defendant. | ) |

STATE OF ALABAMA    )
                    )
BARBOUR COUNTY.     )

### AFFIDAVIT OF JIMMY FACKLER

I, Jimmy Fackler, hereby depose, affirm under penalties of perjury, and attest as follows:

1. My name is Jimmy Fackler. I am over the age of 19 years. I am aware that this affidavit is being given in conjunction with the lawsuit styled *Rodney Downie v. Trans Link Motor Express., Civil Action No. 2:06 CV -313-WHA* pending in the United States District Court for the Middle District of Alabama. I have personal knowledge of the facts contained herein and this affidavit is based on my personal knowledge.

2. I was the General Manager for Trans Link Motor Express, Inc. ("Trans Link") from February, 1996 until October, 2002. Trans Link owned a trucking business in Albany, Georgia. I worked in the Trans Link office in Albany Georgia.

3. Rodney Downie initially worked for Trans Link as an employee truck driver. After about one month as an employee, on March 2, 2001, he became a contract driver. He and Trans

Link entered into a lease purchase agreement dated March 2, 2001 (identified as a Bill of Sale and attached to Mr. Downie's deposition as Exhibit 1) providing for him to lease/purchase a 1996 Kenworth truck from Trans Link. The agreement provided that he was to make 104 weekly payments of $298. After he had made all of the weekly payments, Trans Link would then transfer title to the truck to him.

4. In addition to the lease purchase agreement, Downie and Trans Link entered into an operating agreement wherein Downie agreed to use the truck to haul Trans Link freight to its customers. Trans Link agreed to pay him a gross amount of $.80 per mile. In addition, Trans Link agreed to advance pay all of his expenses, including fuel, taxes, tires, truck maintenance and other expenses incurred in connection with operating the truck. Trans Link made these advance payments directly to the vendors. At the end of each week, Trans Link deducted the lease payment and any all such expenses incurred by Downie from the gross amount due to him. During weeks in which the total of the lease payment and the fuel and other operating expenses for the truck exceeded the gross mileage amount payable to Downie, Downie would owe Trans Link money. In order to insure that Downie would pay any such deficiency, Trans Link required Downie to maintain an escrow account with a minimum balance, usually in the amount of $2000.

5. On October 2, 2002, substantially the same shareholders who owned Trans Link formed Flint River Transportation, Inc. ("Flint River"). At this time Trans Link began to wind down its affairs and cease its trucking operations. Flint River succeeded it in the ownership and operation of the trucking business. Thus, some debts that were owed to Trans Link were assigned by Trans Link to Flint River, including Plaintiff's debt. In addition, over time Trans Link assigned substantially all of its assets to Flint River; however, it did not immediately transfer title to the

truck leased to Mr. Downie at that time. I became general manager of Flint River when it was incorporated. At some point in time after Flint River was formed, Trans Link was dissolved.

6. On October 10, 2002, Downie entered into an operating agreement with Flint River. This operating agreement was on the same terms and conditions as the operating agreement Downie had with Trans Link described in paragraph 4 above.

7. After October 10, 2002 but before he had made all of the required payments for Trans Link to transfer title to the truck to him, the truck broke down and the engine was in need of repair. Mr. Downie asked me to have the truck repaired. A diesel mechanic shop in Albany owned by parties unrelated to Trans Link or Flint River repaired the truck at a cost of approximately $8,176.99. Mr. Downie could not afford to pay for this, so Trans Link agreed to renew and extend his lease purchase agreement to finance the repairs. Accordingly, Trans Link paid the repair bill and entered into another lease purchase agreement with Mr. Downie dated September 15, 2003 wherein he agreed to make 52 weekly payments of $250.00 beginning October 10, 2003. Although the agreement indicated Trans Link, during this time Trans Link was still in the process of transferring assets to Flint River, and he made the lease payments to Flint River as part of his weekly settlement as described in paragraph 4 above. Once these lease payments were made in full, title to the truck was to be transferred to Mr. Downie by either Flint River or Trans Link, depending on who owned the truck at the time it was paid off.

8. In October or early November, 2003, Mr. Downie failed to deliver a load. This constituted a default pursuant to the terms of his operating agreement with Trans Link. In addition, he failed to make his lease payments and failed to return the truck to Trans Link. In addition to the amount owed on the lease purchase agreement, Mr. Downie owed a substantial sum for fuel, tires,

and repairs, such that the total he owed was $13,094.39. Trans Link attempted to recover the truck from Mr. Downie but he resisted.

9.  In October or early November, 2003, Mr. Downie failed to deliver a load. This constituted a default pursuant to the terms of his operating agreement with Trans Link. In addition, he failed to make his lease payments and failed to return the truck to Trans Link. In addition to the amount owed on the lease purchase agreement, Mr. Downie owed a substantial sum for fuel, tires, and repairs, such that the total he owed was $13,094.39. Trans Link attempted to recover the truck from Mr. Downie but he resisted. On December 18, 2003, Trans Link sued Mr. Downie in Barbour County District Court to recover either the truck or the amount Mr. Downie owed Trans Link. Plaintiff did not answer or counterclaim against Trans Link in the lawsuit. Instead, Trans Link filed bankruptcy on December 18, 2003.

10.  As part of his Chapter 13 bankruptcy plan, Mr. Downie indicated he owed Flint River $10,000, and that amount was secured by the Kenworth truck that Trans Link had financed for him. As the successor to Trans Link, Flint River filed a proof of claim in the amount of $13,094.39. The bankruptcy trustee has paid, and as of this date continues to pay, Flint River the sum of $217 per month to satisfy Mr. Downie's debt.

11.  In February, 2004 Mr. Downie contacted me by phone and asked me to forward him a title certificate. Since he had not paid the required payments, and since he was not driving for Flint River and therefore would not be covered by Flint River's insurance, I told him I would not send him the title certificate at that time.

12.  Further affiant sayeth not.

_____
Jimmy Fackler

SWORN to and subscribed before me this  25th  day of July, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 6/26/08