IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RODNEY DOWNIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO.: 2:06cv313 WHA |
| JIMMY FALCO d/b/a | ) |
| TRANS LINK MOTOR EXPRESS, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW the defendant in the above-styled action, Trans Link Motor Express, Inc., ("defendant" or "Trans Link")[1], and submits this brief in support of its Motion for Summary Judgment on all claims asserted by plaintiff Rodney Downie. Defendant respectfully requests that the court grant defendant's motion for summary judgment in its entirety because the plaintiff has failed to establish each and every element of his fraud claim and in addition, Plaintiff's claims are barred by the statute of limitations and the doctrines of res judicata and judicial estoppel.

**I. STATEMENT OF THE CASE**

**A.  The Present Action.**

  *1.  Plaintiff's Complaint.*

Plaintiff Rodney Downie filed this present action on April 7, 2006. Following this Court's granting of Defendant's Motion for More Definite Statement, Plaintiff filed his First

---

[1] Defendant Trans Link Motor Express, Inc. is unaware of any person named Jimmy Falco.

Amended Complaint on August 21, 2006. Plaintiff alleges he agreed to purchase a truck from Defendant, and that Defendant agreed to finance the purchase of the truck and deliver title to the truck after he had made all required payments.[2] (Amended Complaint, ¶ 10.) Plaintiff's First Amended Complaint alleges fraud, deceit and misrepresentation. (Amended Complaint, ¶12). Plaintiff does not allege breach of contract or any other cause of action.

2.    *Defendant's Answer and Motion For Summary Judgment.*

Defendant Trans Link has denied the material allegations in the complaint and asserted various affirmative defenses, including res judicata, estoppel and statute of limitations.

Defendant timely filed its motion for summary judgment with this court on July 31, 2007. Defendant submits this brief in support of its motion.

**B.    Applicable Summary Judgment Principles.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith" when "this is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the defendant establishes it is entitled to a judgment as a matter of law, the burden shifts to the plaintiff to show that summary judgment is not appropriate. Fed.R.Civ.P. 56(e). The plaintiff may not rest upon the mere allegations in his complaint, but rather, must set forth "specific facts" showing a "genuine issue" for trial. Id. In order to create a "genuine issue" for Rule 56 purposes, a plaintiff must produce "'significant probative evidence'" showing an actual dispute as to a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290 (1968)). "Significant probative

---

[2] Plaintiff's complaint erroneously alleges he agreed to purchase two trucks. (Amended Complaint, ¶ 5). However, Plaintiff testified that in reality he only agreed to purchase one truck and the reference to two trucks in his complaint is an error. (Plaintiff's Depo. p. 86. lines 4-17)

2

evidence" is evidence upon which "reasonable jurors could find by <u>a preponderance of the evidence</u> that the plaintiff is entitled to a verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252 (emphasis added). When "substantive evidentiary standards" place the burden of proof on the merits on the nonvmovant, the movant may prevail by offering evidence or by pointing out deficiencies in the nonmovant's evidence. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(<u>en banc</u>)).

The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff is a truck driver. (Plaintiff's Depo. p. 10, lines 1-5). Defendant Trans Link Motor Express, Inc. ("Trans Link") is a dissolved Georgia corporation that formerly ran a long haul trucking operation in Albany, Georgia. (Affidavit of Jimmy Fackler, par. 2,5). Jimmy Fackler was its general manager. (<u>Id</u>., par. 2). The business formerly owned and operated by Trans Link is now operated by Flint River Transportation, Inc. ("Flint River") in Albany, Georgia. (<u>Id</u>.)

2. Plaintiff initially worked for Trans Link as an employee truck driver. (Fackler Aff., par. 3). After about one month as an employee, on March 2, 2001, he became a contract driver. (<u>Id</u>.). Plaintiff and Trans Link entered into a lease purchase agreement dated March 2, 2001 (identified as a Bill of Sale and attached to Mr. Downie's deposition as Exhibit 1)

3

providing for him to lease/purchase a 1996 Kenworth truck from Trans Link. (Id.). The agreement provided that he was to make 104 weekly payments of $298. (Id.). After he had made all of the weekly payments, Trans Link would then transfer title to the truck to him. (Id.).

    3.    In addition to the lease purchase agreement, Downie and Trans Link entered into an operating agreement wherein Downie agreed to use the truck to haul Trans Link freight to its customers. (Fackler Aff., par. 4). Trans Link agreed to pay him a gross amount of $.80 per mile. (Id.). In addition, Trans Link agreed to advance pay all of his expenses, including fuel, taxes, tires, truck maintenance and other expenses incurred in connection with operating the truck. (Id.). Trans Link made these advance payments directly to the vendors. (Id.). At the end of each week, Trans Link deducted the lease payment and any all such expenses incurred by Downie from the gross amount due to him. (Id.). During weeks in which the total of the lease payment and the fuel and other operating expenses for the truck exceeded the gross mileage amount payable to Downie, Downie would owe Trans Link money. (Id.). In order to insure that Downie would pay any such deficiency, Trans Link required Downie to maintain an escrow account with a minimum balance, usually in the amount of $2000. (Id.).

    4.    On October 2, 2002, substantially the same shareholders who owned Trans Link formed Flint River. (Fackler Aff., par. 5). At this time Trans Link began to wind down its affairs and cease its trucking operations. (Id.) Flint River succeeded it in the ownership and operation of the trucking business. (Id.). Thus, some debts that were owed to Trans Link were assigned by Trans Link to Flint River, including Plaintiff's debt. (Id.) In addition, over time Trans Link assigned substantially all of its assets to Flint River; however, it did not immediately transfer title to the truck leased to Mr. Downie at that time. (Id.). Fackler became general manager of Flint River when it was incorporated. (Id.).

5.      On October 10, 2002, Downie entered into an operating agreement with Flint River. (Fackler Aff., par. 6).  This operating agreement was on the same terms and conditions as the operating agreement Downie had with Trans Link described in paragraph three above. (Id.)

6.      In March, 2003, before Plaintiff had made all of the required payments for Trans Link to transfer title to the truck to him, the truck broke down and the engine was in need of repair.  (Plaintiff Depo., p. 38, lines 12-21; Fackler Aff., par. 7).  After approximately five months, during which time Plaintiff did not drive the truck, Plaintiff asked Fackler to have the truck repaired. (Plaintiff Depo. p. 40, lines 16-22; p. 50, lines 18-23; p. 51, lines 1-6).  A diesel mechanic shop in Albany owned by parties unrelated to Trans Link or Flint River repaired the truck at a cost of approximately $8,176.99. (Fackler Aff., par. 7).  Although Plaintiff's testimony is conflicting in this regard, he asserts that at some point he made the final payment on the initial purchase of the truck. (Plaintiff Depo. p. 45, line 13).

7.      Plaintiff could not afford to pay for the truck repair, so Trans Link agreed to front the money for the repair job and renew and extend his lease purchase agreement to finance the repairs. (Id.; Plaintiff Depo. p. 51, lines 1-6).  Accordingly, Trans Link paid the repair bill and entered into another lease purchase agreement with Plaintiff dated September 15, 2003 wherein he agreed to make 52 weekly payments lease of $250.00 beginning October 10, 2003. (Fackler Aff., par. 7).  Plaintiff understood that he would not get the title to the truck until after he had repaid the money Trans Link fronted for the repair job.  (Plaintiff's Depo. p. 52, lines 16-22). Although the written agreement indicates Trans Link, during this time Trans Link was still in the process of transferring assets to Flint River, and Plaintiff made the lease payments to Flint River as part of his weekly settlement as described in paragraph 3 above.  (Fackler Aff., par. 7).  Once these lease payments were made in full, title to the truck was to be transferred to Plaintiff by

5

either Flint River or Trans Link, depending on who owned the truck at the time it was paid off. (Plaintiffs' Depo., p. 52, lines 16-22; Fackler Aff., par. 7).

8.  In October or early November, 2003, Mr. Downie failed to deliver a load. (Fackler Aff., par. 8.). This constituted a default pursuant to the terms of his operating agreement with Trans Link. (Id.) He did not drive for Flint River or Trans Link after he failed to deliver the load. (Plaintiff's Depo. p. 56, line 23; p. 57, lines 1-11). In addition, he failed to make his lease payments and failed to return the truck to Trans Link. (Fackler Aff, par. 8; Plaintiff Depo., lines 21-23). After he failed to deliver the load, Plaintiff admits he made no more payments to Flint River and did not drive the truck for Flint River, but instead used the truck to drive for another company, despite the fact that he did not own it. (Plaintiff Depo., p. 58, lines 1-9). In addition to the amount owed on the lease purchase agreement, at the time he quit driving, Plaintiff owed a substantial sum for fuel, tires, and repairs, such that the total he owed was $13,094.39. (Fackler Aff., par. 8). Trans Link attempted to recover the truck from Plaintiff but he resisted and still has possession of the truck. (Id.; Plaintiff Depo. p.61, lines 12-23; p. 62, lines 1-9).

9.  In order to collect the money Plaintiff owed by Plaintiff and/or recover the truck, Trans Link filed suit against Plaintiff in the District Court of Barbour County on December 18, 2003. (Fackler Aff., par. 9; Plaintiff's Depo., Ex. 3). Plaintiff did not answer or counterclaim against Trans Link in the lawsuit but instead filed bankruptcy on December 18, 2003. (Fackler Aff., par. 9). Plaintiff admits that the reason he filed bankruptcy was to have adequate time to repay the money he owed Flint River/Trans Link. (Plaintiff Depo., p. 62, lines 10-14).

10. As part of his Chapter 13 bankruptcy plan, Plaintiff indicated he owed Flint River $10,000, and that amount was secured by the Kenworth truck in question. (Plaintiff Depo., p. 95,

6

line 23; p. 96, lines 1-2, lines ; Fackler Aff., par. 10). Plaintiff did not list any counterclaims or other claims against Flint River or Trans Link on his bankruptcy petition and schedule of assets. (Plaintiff Depo. p. 67, lines 8-21; Ex. B, Schedule B, Item 20).

11. Since it was the successor to Trans Link, Flint River filed a proof of claim in the amount of $13,094.39. (Fackler Aff., par. 10). The bankruptcy court held a hearing on March 3, 2004 and confirmed the plan. (See Docket Report and Order Confirming Plan, Case No. 03-12870, U.S. Bankruptcy Court for the Middle District of Alabama, attached as Exhibits B and C to Defendant's Motion for Summary Judgment). The bankruptcy trustee has paid, and as of this date continues to pay, Flint River the sum of $217 per month to satisfy Plaintiff's debt. (Fackler Aff., par. 10).

12. In February, 2004 Mr. Downie contacted Fackler by phone and asked him to forward him a title certificate so he could have the truck tagged, but Fackler told him he would not send him the title certificate. (Fackler Aff. Par. 11; Plaintiff Depo. 78, lines 5-23). Fackler did not send him the title certificate because Plaintiff had not paid all of the required payments, and was not driving for Flint River and therefore the truck would not be covered by Flint River's insurance. (Fackler Aff., par. 11).

### III. ARGUMENT

A. **Alabama's Two-Year Statute of Limitations Applies and Bars Plaintiff's Claims**

   1. **Alabama's Statute of Limitations Applies**

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. Klaxon Co. V. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.ed. 1477 (1941). As discussed below, since Plaintiff alleges that all representations made by Defendant were made in Albany, Georgia, but he brought his claim in a federal court sitting in Alabama,

Georgia's substantive law of fraud applies, but Alabama's procedural law applies. (Complaint, Par. 13, 14).

In Alabama, the traditional choice of law rule of *lex loci delicti* governs tort causes of action and requires that the *substantive* law of the place where the tort occurred must be employed, while *procedural* law of the forum state is to be applied. Alabama Great So. R.R. v. Carroll, 97 Ala. 126, 11 So. 803 (1892). Accordingly, in this case this court must apply the procedural rules of Alabama, but the substantive law of Georgia. Thus, the initial inquiry is whether an Alabama court would consider the Georgia statute of limitations as procedural or substantive. As discussed below, Georgia's statute of limitations with respect to common law fraud is procedural rather than substantive, and therefore Alabama's two-year statute of limitations applies to Plaintiff's fraud claim.

It is generally recognized in Alabama that statutes of limitations are procedural, and that an Alabama court will apply the statute of limitations of the foreign state *only* if it is clearly demonstrated that the "limitation is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself" Department of Revenue v. Lindsey, 343 So.2d 535, 537 (Ala.Civ.App.1978). Similarly, in Battles v. Pierson Chevrolet, Inc., 290 Ala. 98, 274 So.2d 281 (1973), the Alabama Supreme Court stated the general rule that the statute of limitations of the forum state controls, *unless* the accident occurred and the cause of action arose in a jurisdiction which has a so-called "built-in" statute of limitations.

In Etheredge v. Genie Industries, Inc., 632 So. 2d 1324 (Ala. 1994), the plaintiff was injured in North Carolina by an allegedly defective product and filed a lawsuit in Alabama. Applying the foregoing principles, the Alabama Supreme Court determined that the North Carolina statute of repose, which bars products liability claims brought over six years after the

8

product is initially purchased was procedural and not substantive, and therefore did not apply. The Court reviewed North Carolina's rule of repose and observed that it was contained in the "Civil Procedure" chapter of the North Carolina General Statutes and merely placed a six-year limit on the time for filing products liability actions in North Carolina. Satisfied that North Carolina's rule of repose was not "so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself", the Court found the rule to be procedural as opposed to substantive, and applied Alabama's two-year statute of limitations. Id.

The facts of the present case are on point with those in Etheredge. Georgia's statute of limitations for common law fraud is found in O.C.G.A. § 9-3-31, and provides as follows: "Actions for injuries to personalty shall be brought within four years after the right of action accrues." See Hartley v. Gargo, 415 S.E.2d 510 (Ga.App.1992). This code section is contained in Title 9, identified as the "Civil Practice" section of the Georgia code. Clearly, it merely places a time limit on the time for filing actions for injuries to personalty, including fraud claims. Id. Therefore, application of well established Alabama case law and the Alabama Supreme Court's reasoning in Etheredge to Georgia's statute of limitations for fraud claims reveals that the Georgia statute of limitations is procedural in nature, and as such cannot be considered by this Court. Instead, this Court must apply Alabama's statute of limitations.

    **2.    Plaintiff's Claim Is Barred by the Statute of Limitations**

Fraud actions in Alabama are subject to a two-year limitations period. Ala. Code § 6-2-38(*l*) (1993). However, that period does not begin to run for fraud actions under the so-called discovery rule until "discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3 (1993);

9

See also Cordell v. Greene Finance of Georgetown, Georgia, 953 F. Supp. 1391 (M.D. Ala. 1996).

The question of when the party discovered, or should have discovered, the fraud is a question for the jury in most circumstances. Kelly v. Connecticut Mutual Life Ins. Co., 628 So. 2d 454 (Ala. 1993). However, the question of when a plaintiff should have discovered a fraud may be decided as a matter of law in cases in which the plaintiff actually knew of facts that would have put a person on reasonable notice of the fraud. Id.; see also Jim Walter Homes, Inc. v. Kendrick, 810 So.2d 645 (Ala. 2001).

In the present case, the question of discovery of the alleged fraud may clearly be decided as a matter of law. Trans Link sued Plaintiff seeking payment of the debt and recovery of the truck in December, 2003. Clearly, the fact that he had been sued on the debt and that Trans Link sought to recover the truck was sufficient to put him on notice that Trans Link did not intend to deliver the title to him. (Facts, ¶ 9). Further, Plaintiff admits that in February, 2004 he had a conversation with Fackler wherein Fackler told him he would not give him a certificate of title for the truck. (Facts, ¶ 12). At that point he knew of actual facts that would have put a person on reasonable notice of any fraud. Since more than two years elapsed between December, 2003 (or February, 2004) and April 7, 2006, the date on which Plaintiff filed this action, his claim is barred by the statute of limitations and due to be dismissed with prejudice.

In addition to Plaintiff's testimony regarding his discovery of the alleged fraud, Plaintiff failed to plead his claim in a manner sufficient to invoke the tolling provision of Ala. Code §6-2-3. In order for a plaintiff to avail himself of the "saving" or tolling provision set forth in Ala. Code § 6-2-3, his complaint must show the time and circumstances of the discovery of the alleged fraud. Smith v. National Security Insurance Company, 860 So.2d 343 (Ala. 2003);

Angell v. Shannon, 455 So.2d 823 (Ala. 1984). Plaintiff's initial complaint, which he filed on April 7, 2006, failed to allege fraud with the requisite specificity, and this Court granted Defendant's Motion for a More Definite Statement (See Order, Doc. 8). In response, Plaintiff filed his Amended Complaint, yet only alleged that "Defendant's fraud, deceit and misrepresentation commenced on March 2, 2001, continued thru October 8, 2003 and thereafter to the time of this filing." (Amended Complaint, Par. 12). Plaintiff did not file his complaint until more than two years after October 8, 2003, and his complaint fails to show the time and circumstances of his discovery of the alleged fraud. Moreover, his characterization of the alleged misrepresentation as being continuing in nature is insufficient, as it is "wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint." Smith, 860 So. 2d at 347. Therefore, Plaintiff's claim is due to be dismissed because it is barred by the statute of limitations.

**B.  Plaintiffs Claim Is Barred by the Doctrine of Res Judicata**

Even if this Court finds Plaintiff's claim is not time barred, it is still due to be dismissed because Plaintiff failed to assert his fraud claim in a prior proceeding, and it is barred by res judicata.

"Federal preclusion principles apply to prior federal decisions, whether previously decided in diversity cases or federal question jurisdiction." CSX Trans., Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003). Res judicata, or claim preclusion, is a bar to parties seeking to re-litigate a cause of action that was or could have been raised in that action, and has been applied to bankruptcy proceedings. In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). For res judicata to apply, the asserting party initially must show that "(1) there was a prior judgment on the merits, (2) entered by a court of competent

jurisdiction, (3) with substantial identity of the parties or their privies, (4) involving the same cause of action." In re Baldwin, 307 B.R. 251, 260 (M.D. Ala. 2004, Albritton, J.). As will be shown, Defendant can satisfy each of these elements.

"The confirmation of a Chapter 13 plan by a bankruptcy court of competent jurisdiction that has acted in accordance with the procedural requirements of notice and a confirmation hearing, is given the same effect as a district court's final judgment on the merits." Id. In the instant case, the bankruptcy court having jurisdiction over Plaintiff confirmed his plan after due notice. (Facts, ¶ 11). There is also substantial identity of the parties or their privies, so the third requirement is satisfied.

Both causes of action involve Plaintiff's indebtedness to Trans Link's successor in interest, Flint River. The Eleventh Circuit has held that claims are part of the same cause of action for res judicata purposes when they arise out of the same transaction or series of transactions. In re Piper, 244 F.3d 1989(11th Cir. 2001). In this case, both the bankruptcy proceeding and the instant lawsuit both involve indebtedness arising out of the same transaction or series of transactions. Thus, the fourth element is satisfied as well.

Next, the Court must determine "whether a claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." Id. at 1296. In Piper, the Eleventh Circuit observed that for res judicata purposes, claims that "could have been brought" include claims in existence at the time the original complaint (or in this case, the original bankruptcy petition) is filed. Id. In the present case Plaintiff alleges that at the time he entered into the lease purchase financing agreement with Defendant, Defendant misrepresented certain facts regarding the very indebtedness he admitted to and identified in his bankruptcy proceeding. Any such fraud claims, by their very nature, would have been in existence at the time Plaintiff

filed his bankruptcy petition, and he could have asserted them as a counterclaim to the proof of claim Flint River filed in his bankruptcy petition, or otherwise raised the issue to contest the validity and amount of the debt. Though Plaintiff admits his indebtedness to Flint River and identified Flint River as a secured creditor, he failed to disclose any claims, counterclaims or setoffs against Flint River on his bankruptcy petition.[3] (Facts, ¶ 10). Thus, Plaintiff's claims in the present action are barred by res judicata.

**C.     Plaintiff's Claim Is Barred by Judicial Estoppel**

Judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted. New Hampshire v. Maine, 532 U.S. 742 (2001). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1293 (11th Cir. 2003). Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al., 81 F.3d 355, 362 (3d Cir.1996).

Judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, numerous courts have concluded that "[w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." Ryan, 81 F.3d at 360; see also, Patriot Cinemas, Inc. v. General Cinema Corp. et al., 834 F.2d 208, 214 (1st Cir.1987); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982).

The applicability of judicial estoppel "largely turns" on two factors. See Barger, 348 F.3d at 1293. First, a party's allegedly inconsistent positions must have been made under oath in

---

[3] Item 20 of Schedule B, Personal Property to Plaintiff's bankruptcy petitions requests Plaintiff to identify any counterclaims or rights of setoff, and Plaintiff did not disclose any such counterclaims or setoffs. See Plaintiff's Depo., Ex. 5.

13

a prior proceeding. Id. Second, the inconsistencies must be shown to have been calculated to "make a mockery of the judicial system." Id.

In Burns v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), the Eleventh Circuit reconciled these two factors with a similar factor-test set forth by the Supreme Court in *New Hampshire v. Maine*:

> Recently, the Supreme Court observed that, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle;" nevertheless, the Court went on to enumerate several factors that inform a court's decision concerning whether to apply the doctrine in a particular case. Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. This list is by no means exhaustive, however, because the Court went on to explain that "in enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."

Burnes, 291 F.3d 1282, 1285 (quoting New Hampshire, 532 U.S. at 750-51). The Eleventh Circuit then explained: "We conclude that the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions referenced above, and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." Id. As discussed below, both factors utilized by the Eleventh Circuit are present in this action. Consequently, Defendant's motion for summary judgment should be granted.

Plaintiff has taken inconsistent positions in the instant case and his bankruptcy proceeding. In this case, Plaintiff asserts a claim for fraud arising out of his lease purchase financing agreement with Defendant, which resulted in a debt he acknowledged in his

14

bankruptcy case; in the bankruptcy case, he failed to disclose his fraud claims against Defendant as financial assets. A debtor seeking bankruptcy protection must disclose all assets or potential assets to the bankruptcy court. 11 U.S.C. § 521(1), 541(a)(7). In addition, a debtor must amend his financial disclosures if circumstances change. In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir.1999). A plaintiff takes inconsistent positions when he has claims against a debtor and later denies under oath in his bankruptcy case that those claims exist. See Barger, 348 F.3d at 1294. Plaintiff failed to disclose his claims either in his original bankruptcy petition or by amendment.

Plaintiff's inconsistent positions were also intended to make a mockery of the judicial system. Evidence that a plaintiff intended to make a mockery of the judicial system may be "inferred from the record" when a plaintiff knows of his claims and has a motive to conceal them. See Barger, 348 F.3d at 1294. At the earliest, Plaintiff would have known of his fraud claim when Defendant sued him in Barbour County District Court in December, 2003, on the very day he filed bankruptcy. Instead of amending his bankruptcy petition to disclose his claims to the bankruptcy court and to creditors, he swore under penalty of perjury he had no claims. "Omitting the claims from the schedule of assets appeared to benefit [Plaintiff] because, by omitting the claims, he could keep any proceeds for himself and not have them become part of the bankruptcy estate." Barger, 348 F.3d at 1296; see also Burnes, 291 F.3d at 1288.

Georgia's state courts have also applied judicial estoppel and res judicata in dismissing cases based on the plaintiff's failure to identify claims against defendants in a bankruptcy case. In Southmark Corp. v. Trotter, Smith & Jacobs, 442 S.E.2d 265 (Ga.App.1994), the Court of Appeals of Georgia applied federal law in upholding summary judgment in favor of a defendant based on failure of the plaintiff to identify as assets its claims against the defendant when it filed bankruptcy. In that case, the court held that "there was no reference to any claim against

defendants and this failure to disclose precludes subsequent assertion of those claims." Id. at 267. This Court should grant Defendant's motion for summary judgment, because his failure to disclose his claims precludes subsequent assertion of those claims.

**D.      Plaintiff Cannot Prove the Elements of Common Law Fraud**

Finally, Plaintiff cannot satisfy the elements of common law fraud under Georgia law. The elements of fraud under Georgia law are (1) a false representation by the defendant, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) plaintiff's justifiable reliance on the false representation and (5) damages to the Plaintiff. Almond v. McCranie, 643 S.E.2d 535 (Ga.App.2007). Plaintiff claims Defendant represented that it would give him title to the vehicle after he had made all of the payments pursuant to their agreements, yet admits in his bankruptcy proceeding and under oath in this lawsuit that he has not yet paid Defendant the full amounts he owes and that Defendant is a secured creditor, thus entitled to possession of the truck title. Although Plaintiff's testimony is conflicting in this regard, Defendant presumes he will rely on his conflicting testimony to assert that he paid off the initial purchase price on the truck and by the terms of that agreement he is entitled to the title to the truck. However, any such argument must fail, because it ignores Plaintiff's admission that he entered into a new lease purchase agreement, secured by the title to the truck, in order to finance the repairs to the truck. (Facts, ¶¶ 6,7). Simply put, there has been no false representation by the Defendant, and no damage to Plaintiff. Plaintiff cannot prove all of the elements required for fraud, and Defendant is therefore entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court should grant defendant's motion for summary judgment on all of Plaintiff's claims asserted in this action and dismiss this action with prejudice and with costs taxed against the Plaintiff.

                    *Joel P. Smith, Jr.*_____
                    Joel P. Smith, Jr (SMI192)
                    Attorney for Defendant

**OF COUNSEL:**

WILLIAMS, POTTHOFF, WILLIAMS, & SMITH, L.L.C.
Post Office Box 880
Eufaula, Alabama 36072-0880
Telephone:   (334) 687-5834
Facsimile:    (334) 687-5722

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing has been served on the following by directing same to their office via the CMF electronic mail service and by United States mail, postage prepaid, on this the 31st day of July, 2007:

Malcolm R. Newman
P.O. Box 6137
Dothan, AL 36301

                    *Joel P. Smith, Jr.*_____
                    OF COUNSEL